The last case for argument is 17-2625 T.S. Patents v. Yahoo! T.S. Patents v. Yahoo! Good morning. I'd like to start with the issue of over-generalization by the district court. Under cases like Infish and Sales Vision X, a claim must be analyzed with all its essential limitations for Alice Step 1. The district court did not do that. The district court reduced, at get-go, reduced all claims to very high-level concepts, and found those claims abstract ideas because those high-level contracts were abstract. So this is like circular logic. Basically, you first extract a claim into abstract ideas, then turn around and find a claim to be an abstract idea because you just extracted an abstract idea from it. I have been very outspoken and critical of this idea of overly aggressive reductionist analysis of claims and stating what the claim is directed to in very broad, general, abstract ideas. It's sort of an abstraction of an abstraction. But I have to say, in this case, the district court made a very thorough analysis that went beyond simply the broad statement that she started with for each patent as to what the claims were directed to, and then proceeded to look specifically at the essential elements in those claims. And it doesn't seem to me that for any of these patents, the analysis done by the district court sort of fell into that overly reductionist problem. Well, let's use an example. 547. 547 used Claim 1 as an example. 547. So the issue, Your Honor, is whether this claim is directed to improvement in computer functionality. If it is directed to improvement to computer functionality, then we have a patent-eligible claim under InFish and a lot of other cases. So to us, there's two components in this test, this improvement to computer functionality. First, the claim has to be, in general, directed to some kind of computer functionality, which the claims are directed to computer functionality. Second, the claims have to recite the actual improvement to computer functionality. Otherwise, you'd be like Capital One. You said you have solved the problem, but you did not recite the solution. And in this case, our claims meet both standards, starting with 547, Your Honor. 547, the general technology of 547 is about online access of server's directory, server's folder structure. And this folder structure tends to be bulky, big. And before the patent, the prior cannot do that. And the solution, this particular solution, our inventor came out, is to use a digital surrogate. This digital surrogate is MLail, the multi-layered item list. This thing is small, can be recited in a RAM, and also can be transmitted over the network without overburdening the network, and also in a reduced form. So this particular solution makes this process much faster and easier, which achieves this look and feel of a single virtual machine. So that's an improvement to this functionality of remote access of folder structure. And the claim recites those improvements. It's not just conclusive language. But the district court looked at the claims. The district court said, well, okay, the 5-4 patent is directed to organizing and viewing data on a network in a reducible hierarchy. And then went on to talk about the claim recites three major steps. And she talks about each of those three major steps. Seems to me that's exactly what she was supposed to do under the state of affairs that we find ourselves in Alice Mayo. Your Honor, that's sort of lip service. They just perfunctorily go over the elements. But if you actually analyze the claim with all the essential elements intact, that conclusion is just, you cannot reach a conclusion. That high-level concept is what this claim is directed to. The claims recite an algorithm, Your Honor. The algorithm starts with, at each start of a user session, you create an M-layer. This M-layer is a logical representation of the folder structure. Then you send the M-layer over the internet to the user. And the user can edit and view the M-layer as if it's editing and viewing the folder directory. If there's any edit made to the M-layer, the computer will update the folder structure accordingly. And at the end of this process, when the user exits the session, the M-layer is deleted. So this per-user M-layer is very crucial here. And not only enables the fast and easy access to the folder structure, it also enables concurrent access by multiple users of the same folder structure. So achieve that single virtual machine. It's like everybody is using a single virtual machine. So that's an important improvement. And this is a motion to dismiss. And it's supposed to be the evidence most favorable to us, to the non-movement. But if you read her honors, the district court opinion, she went through a kind of pro-functory, oh, this is conventional, that's conventional, so I don't need to count this, I don't count that. But there's no evidence to support those conclusions. The evidence shows, the only evidence is what is pleaded in the patent. And also, we have the motion for judicial notice, and we think we should have a chance to add this in had the judge allowed us to amend the pleading. What language in claim one of the 547 patent did Judge Koh overlook? Okay, so there's several. She talked about the three major steps, and she made reference by column and line number of the specific claim language she was addressing. Oh, it's not like she didn't mention the claim element. She drew the wrong conclusion after she mentioned it. She said those elements, first of all, she said this is preview-based. She said organizing and viewing data on a network in a reducible hierarchy. Okay, so first of all, this is not about organizing and viewing data. This is about to allow a remote user to access the folder structure of the network, the folder structure of the server. So a very specific goal is directed. It's not about this abstract of our organizing and viewing data on a network. And also, reducible hierarchy.  But here, that term is referring to the term in a reduced form. In a reduced form here means when you create this MLAO, you want to be in a reduced form so it occupies the least amount of footprint when you transmit over the Internet. And every time you click a node, it only transmits a small amount of additional data. That's the reason this thing can work, can make it faster and easier. So that's a crucial element. But that makes the crucial element into a hierarchy. Reducible hierarchy becomes an abstract concept. So that's why her conclusion was wrong. She went through the thing, but she basically just viewed the thing as abstract ideas. That's where we have problems. And I'm going to go through the other claims too. Please. I'll just ask you, you referenced this motion that you have a motion pending before us to supplement the record. Did you move to try to supplement the record below? I mean, you're asking us to consider materials that were not considered below, which is pretty aggressive. So the question is, did you move to have her put these in the record and she declined? We never had a chance, Your Honor. So here's what happened below. On the first motion to dismiss, she granted the motion. And at the same day, she issued the judgment. And by the local rule, we cannot do anything further. That's the end of the case. We cannot find a motion for reconsideration. And, of course, we cannot amend a completing. And normally, by 9th Circuit law, a motion to dismiss can be granted without a leave to amend. It is rarely correct. It's only correct in extraordinary cases. So in that district, nobody in the first motion to dismiss in the opposition said, hey, if you grant this motion, it should give you a leave to amend, because that's the norm. Unless it is a pure legal issue, which it is not. In response to the motion to dismiss, you have an opportunity at that point, did you not, to seek leave to amend? That's what I'm trying to say. In 9th Circuit, we don't normally do that, because 9th Circuit law is leave to amend should always be given, only in extraordinary, extraordinary cases. But did you move to amend after the motion to dismiss was filed? No, because we did not think the motion has enough merit. So we did not move. We just opposed it. We just opposed it. The judge did not say, hey, wait, I should not give you a leave to amend, because you did not ask. The district judge never said that. The district judge said leave to amend is futile in this case. So that's the 9th Circuit law. You cannot adjust on the first motion to dismiss and grant it without leave to amend, unless it's an extraordinary case. It's a pure legal issue. And here, it's not. It's a lot of a factual issue here. I'll move on to the 473 pattern. Here, the general question, Your Honor, the claims are direct to the general computer functionality of online multitasking. The prior art had that, but very poorly, and often result in hanging and blocking. And our inventors solved that problem. And here, how we solved the problem is to use a combination of this thing called user-level task list and with a straight lock. So this prevented hanging and locking happening in prior art, which makes this multitasking unworkable. So this is a specific solution, and it's specifically recited in the claim. And so this fits the standard of improvement to computer functionality, and it should be patent eligible. And for the 442, the general functionality here is directed to online file sharing. And the prior art, believe it or not, in 2002, which is a priority date of the patent, is the available method of sharing is sent by email, which, if it's a big file, takes a long time, and overburning the network. And our client solution was not moving this file at all in the network. The file stays in the network, and you just send this file access information from A to B, instead of sending the file. And the user B can access the file directly by using the file access information, which is called metadata in this case, because the suggestion by the examiner. And what it is, is the location of the file, the identity of the file. So to allow user B to directly access the file, as if the file sits in his own computer. That's the virtual machine concept. So that's the solution that makes this much faster, this process of sharing a file with another online user. So that's why the claim recites this improvement. So that's the improvement to technology, to computer functionality. That should be patent eligible. And for the ADAM1 patent, the general functionality the claims are directed to are the same as online file sharing. But here, it's more specific than 442. The general functionality is about posting a file in a common area online, so other users can access the file. And the traditional way, the conventional way, is of course saving the file in the common area, so other people can use it. And when you're done, deleting it. But our client solution is similar to 449, so we don't move the file over to sit in my private storage area. But when I want to share this, post it on the common area, I post the file location information, the access information, onto the common area. So people in the common area can directly access the file without having to transfer the content of the file itself. And to do this, of course, I have to unlock, remove a privacy lock, because those sit in my private area. So I need to remove the privacy lock at the same time, so other people in the common area can access. So this makes it more dynamic, the posting and unposting process. I know there's a lot of material covered in your briefs, but your time is, you've exceeded your time. So if you have one other statement on something you haven't covered yet, I'll allow you to do that. But if not, why don't we hear from the other side. Okay, thank you. Thank you. May I proceed? Yeah. Good morning, your honors, and may it please the court. The district court decision here should be affirmed because the district court properly applied the Alice two-step test in determining that these claims are not patent eligible. We heard primarily about step from step one arguments that the district court supposedly oversimplified the claims here. But for each of the claims in each of the patents, we believe that the district court properly determined that each of the representative claims is directed to an abstract idea. TS patents claims that the district court overgeneralized the asserted claims. But as you noted, they did not contest the fact that the district court properly identified each of the claims as being representative. They have not taken issue with that. Well, let's skip over to that and go to step two of each of these claims. Because while I agree with Judge Lynn, she seems to have done a very thorough opinion on each of these claims in some detail. But as far as discerning whether or not this is a conventional use or something more, why isn't there enough in this record to at least get through a 12B6? And I think the reason it's simple is that if you look at the specifications themselves, the specifications confirm that the claims recite conventional computer components that are used in their conventional manner. If you look at the elements recited, you see things like servers and processors, user interfaces and program code. And then the types of functions that they're supposedly performing are displaying information, selecting, storing, deleting and accessing information. And the cases we've said in our brief show that each of these components in each of these functions has been found time and time again by this court to be routine and commonplace. There's nothing, if you look at the claims, and again, we have to focus on what's in the claims. If you look at the claims, there's nothing in those claims, when you look at them, that shows that the components here are used in any manner other than as the way they're intended to be, including off-the-shelf components. And we cited the electric power case to show that that's exactly what this court has previously held. The only other argument you hear from them is that if you take a step back and don't focus on each one of the individual components, but you look at the order combination as a whole, that that somehow maybe saves these claims. But, again, if you look at the case law on this, and we've cited in our briefs the electric power case and the intellectual ventures versus eerie indemnification case, that nothing, again, in these claims shows that anything other than the components being used in an off-the-shelf manner as they're routinely understood and expected to be used. And because of that, even if you consider them as an order combination, it does not take them out of the realm of step two of Atlas. So it doesn't matter if you look at the combination of components as an order combination or if you look at them individually, you come back to the same unmistakable conclusion that these are off-the-shelf components used in their conventional and traditional manner. I could respond to some of the specific arguments, if you'd like, that they raised in their briefs. I haven't heard them raise an oral argument here, anything really about step two. The argument was really about step one that we heard. I'm happy to go deeper into the step two analysis if you'd like, Your Honor, but I think I've addressed at a high level, I think, the reasons why none of the claims here get outside the focus of the step two analysis. I wanted to address, though, the brief exchange I had with your friend about the motion to amend and whether he had the opportunity and his concern about not having had the opportunity yet to amend because the district court said it would have been futile. Sure, and I think that there's a couple of answers to this. First of all, as you pointed out, they did have the chance to amend. In response to a motion to dismiss, you've really got two choices at the district court. You can fight on the complaint as you've pled it and simply oppose the motion, which is the route that they took, or you have a matter of right to file an amended complaint in response to a motion to dismiss. They didn't go that route. They thought their arguments were good enough. They thought their claims were good enough, so they went the route of we're just going to oppose. So they didn't try to bring any of these additional arguments that they're now trying to bring into the case now. So it's sort of like they're trying to have their cake and eat it, too. They took a first shot on the record as they had created it in their first complaint, and now since they lost, they're trying to have another shot at it. And I think you see that if you look at their briefs. The only explanation that they gave in their briefs. Typically, wouldn't this district court dismiss without prejudice? No, not in my experience. This is a fairly common practice. I've actually had cases before this court before from New York and from other districts where it's commonplace, is that it's understood that if you are going to oppose a motion to dismiss, you take your best shot. You can either file an amended complaint and then have maybe a new motion filed, or if you're just going to oppose, that's your chance to do it. So I think, no, it's not uncommon. But second of all, even if you look further, so if we look past the issue that they didn't raise this issue below, and we look at what they're actually suggesting saves these claims, they really mention three things. They mention new patents. They mention other specifications. And they mention portions of a prosecution history. Now, let's look at those because the district court determined, as you heard, that they would not grant leave to amend because you couldn't cure the defects that were present in these claims. Adding new patents to the case, that certainly doesn't cure any defects with the claims in the current patents. So I don't understand the argument there. I think that that one we can just put aside. If they wanted to add new claims or new patents, that would do nothing to the issues with these claims. Second issue is specifications. They say we should be able to cite to other specifications. They give one example in the briefs, if you look. And the one example is that they say the lock is not abstract, but it's a real specific implementation. Even if that's true, that's not the reason why the court below found the claims to be patent ineligible. The district court found the claims require only a conventional lock. That was the key. So whether or not the lock is real and specific doesn't matter because the specifications themselves admit that the locks are conventional. And you can see that that's cited in our briefs. It's in the record. The specification itself says the locks here can be conventional. So again, citation to this one part of a specification wouldn't save these claims. The third and final thing that they've cited is a portion of a prosecution history. And again, they only gave one example in the briefs, and that was a statement about accessing a multi-layer folder. And they cite to one page from the prosecution history in the briefs, and that's JN 088. Now, if you look at that page of the prosecution history, the primary focus there is talking about what a prior art reference shows. It's got nothing that I can discern that would support an argument here that would take these claims out of the Step 2 part of the Alice Mayo test. So again, long answer to your question, but a couple of things. First of all, they did not seek leave to amend before. They did not avail themselves of that possibility. They didn't do anything post-entry of the motion to dismiss the granting of that, to do anything to alter the record. And then here, trying to put these new arguments in, even if you let them supplement the record and make these new arguments about new patents, specifications, and prosecution history, none of that would get them over the hurdle here. That's why I think the district court was right in determining that a motion to amend here would be futile, and that's why it was proper not to grant leave. Thank you. Thank you, Your Honor. So, excuse me, about Step 2. Yes, the components used here, many of them are conventional components, but just like any patent, you invent a new circuit, and you have conventional capacitors, transistors, resistors, but it doesn't mean the combination of them are not novel, are not unconventional, are not patent-worthy. Here, there's no evidence on the record. So this is a motion to dismiss. We are supposed to give the benefit of the doubt in this process. There's no evidence in the record to support the conclusion that 547 is an example. 547 invented this new way of using MLAO as a digital surrogate for the easy and fast viewing of the directory folder structure. There's no record saying that's conventional. There's no record. For the 473 patent, there's no record to show that somebody has solved the issue of blocking and hanging in multitasking by using a combination of user-level task list and a thread lock. So those combinations are not shown to be conventional, and those are our inventors' contributions to this field. For the 442 patent and the 891 patent, there's no record to show that the prior art had this. Our invention is instead of transmitting a file from A to B, we're not moving the file. We're just transmitting or storing the file access information to allow B directly to view the file through the network. So there's no record to support that's conventional. So this is a combination of those things, and at this stage of this litigation, there's no ground to say they're conventional. In response to the motion for judicial notice, it's a Ninth Circuit law. A motion to dismiss can be granted without leave to amend only in extraordinary cases. That's why even the judge here did not say, you did not ask for leave, so that's why I don't even address that. Because that's just not the law under Ninth Circuit. Ninth Circuit, for the first round, you have to give the litigant, the plaintiff, at least one leave to amend, because otherwise this has to be extraordinary cases. This is not an extraordinary case. It's not, in some cases, this side is a pure legal issue. You have to change your claim to salvage the thing. But here is a lot of factual issues. What is conventional? What is non-conventional? The judge, lots of time, is just drawing conclusions without actually supporting, or based on 2020 hindsight. I mean, we're in 2017, 2018, and we are talking about a state of the art in 2002, Your Honor. So that's... And regarding whether we have the chance, and after the judge issued the order, or whether we have a chance to salvage the issues. Okay, we never had the chance. Like I said, Your Honor, the judge had this one-two strike all at the same time. So in our district, if the judgment of the issue, you cannot file a motion for reconsideration, cannot file anything, because that's the end of the case. Your only recourse is to appeal. So that's... Am I out of time? Yes, you are. Yes, I'm sorry. Okay. Thank you. We thank both sides. The case is submitted. That concludes our hearing. All rise. The Honorable Court is adjourned from day today.